UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MIDVALE INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV1650 JCH |
| | ) | |
| TIMOTHY BUTLER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Timothy Butler's Motion to Transfer, filed November 10, 2015. (ECF No. 6). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Midvale Industries, Inc. ("Midvale") is a supplier of foundry equipment, foundry supplies, finishing equipment and supplies, cleaning equipment and chemicals. (Petition for Fraud, Abuse of Process, Breach of Contract, and Destruction of Evidence (hereinafter "Complaint" or "Compl."), ¶ 1). Midvale represents product manufacturers, and sells those manufacturers' products to foundries and similar companies. (*Id.*).

In 2006, Midvale contracted to employ Defendant Timothy Butler ("Butler") as an independent contractor. (Compl., ¶ 9). In or around December, 2012, the parties entered into an agreement whereby, effective January, 2013, Butler would convert from an independent contractor sales agent to a full-time account manager, a Midvale sales employee. (*Id.*, ¶ 10). At some point subsequent to this status change, Midvale provided Butler with notice of the following company policy:

**Other Employment and Compensation**

> Employees may hold outside jobs in businesses or professions *unrelated* to the business of the Company as long as the employee meets the performance and attendance standards of their job responsibilities with the Company. Unless an alternative work schedule has been approved by the Company, employees will be subject to the Company's scheduling, regardless of any existing outside work assignments.
>
> The Company's firm expectation is that during working hours and while using company equipment, employees will not sell, represent or accept any form of compensation or payment due to efforts representing any company other than Midvale. This includes, but is not limited to, representing products or equipment, new or used, be they of a competitive or noncompetitive company without processing said transactions through normal Midvale practices and procedures.
>
> Any employee found to be selling, representing or accepting any form of compensation for representing other companies will be subject to disciplinary action, up to and including termination.

(*Id.*, ¶ 11). Furthermore, in January, 2013, Butler signed a Confidentiality Agreement with Midvale, stating in part as follows:

> [I]f you choose to receive access to all Midvale's customer information, you agree to maintain the confidentiality of Midvale's customer and business information during and after your employment by Midvale or its successor. Specifically, as a condition to receiving all customer and other business information from Midvale, you agree:
>
> - You will never use Midvale's confidential customer or business information improperly for your own benefit, nor will you disclose or divulge to any other person or entity (including a competitor of Midvale) any Midvale confidential customer or business information that you might receive, unless required by law or with Midvale's written consent;…

(*Id.*, ¶ 15).

According to Midvale, at minimum between January and March, 2015, Butler was selling competing product for A.F. Gelhar Sand ("Gelhar"), a company based in Markesan, Wisconsin. (Compl., ¶¶ 13, 20, 22).[1] Midvale alleges that while trying to sell Gelhar product Butler used Midvale confidential business and customer information, in violation of the Midvale

---

[1] Butler admits that he performed certain consulting services for Gelhar as an independent consultant during his employment with Midvale. (Butler's Answer, ¶ 22). Butler maintains, however, that the now deceased former president of Midvale, Webb Kane, authorized Butler to act as a consultant for Gelhar during his employment with Midvale. (*Id.*, ¶ 36).

Confidentiality Agreement. (*Id.*, ¶ 21). Midvale further asserts Butler used his Midvale company car while making sales calls for Gelhar, and charged Midvale for expenses such as hotels and meals for his Gelhar sales calls. (*Id.*, ¶¶ 23, 24).

On or about April 29, 2015, Butler and Tony Clark, another Midvale employee, made a sales call to Midvale customer Waupaca Foundry. (Compl., ¶ 26). At that time, the Waupaca receptionist identified Butler as a Gelhar sales employee. (*Id.*).[2] Midvale alleges Butler told Clark that he had sold product for Gelhar approximately five years earlier, but had not done so recently. (*Id.*, ¶ 27).

In May, 2015, Midvale asserts Butler attempted to misappropriate Midvale confidential business information, by at minimum transferring confidential information from his Midvale email account to his home email account. (Compl., ¶ 29).[3] That same month, Midvale president Gregg Kitzelman traveled to Chicago, and asked Butler to meet him at a nearby hotel. (*Id.*, ¶ 31). When Butler arrived, Kitzelman informed him that his employment with Midvale was terminated, effective May 12, 2015. (*Id.*). Kitzelman informed Butler that the reasons for his termination were: (1) he had violated company policy by selling for a competing company, namely Gelhar; (2) he had attempted to misappropriate confidential Midvale information; and (3) he had avoided a mandatory meeting with Kitzelman on or about May 7-8, 2015, without adequate explanation. (*Id.*, ¶ 32).

On or about May 12, 2015, Butler sought unemployment compensation from the Illinois Department of Employment Security. (Compl., ¶ 34). In order to obtain this compensation Butler claimed, falsely according to Midvale, that he had not sold product for Gelhar. (*Id.*).

---

2 Butler asserts the receptionist's reference to him as a Gelhar sales employee was inaccurate. (Answer, ¶ 26).
3 Butler admits that from time to time during his employment with Midvale, he sent business information to his personal email account, but insists it was in connection with the performance of his duties as a Midvale employee. (Answer, ¶ 29).

Butler further filed a complaint with the Equal Employment Opportunity Commission, claiming he was terminated on the basis of his age, and a charge with the National Labor Relations Board, claiming he was terminated in retaliation for his protected concerted activities. (*Id.*).

On or about October 5, 2015, Midvale filed its Complaint in this matter in the Circuit Court of the City of St. Louis, Missouri. (ECF No. 3).[4] In its Complaint, Midvale asserts claims for: Breach of Employment Contract (Count I); Breach of Confidentiality Agreement (Count II); Breach of Fiduciary Duties (Count III); Unjust Enrichment for Employment Fraud (Count IV); Unjust Enrichment for Expense Fraud (Count V); Abuse of Process (Count VI); Fraudulent Inducement—Employment Contract (Count VII); Fraudulent Inducement—Confidential Information (Count VIII); Fraud (Count IX); Intentional Destruction of Evidence (Count X)[5]; and Negligent Destruction of Evidence (Count XI). (*Id.*, ¶¶ 43-103).

As stated above, Butler filed the instant Motion to Transfer on November 10, 2015. (ECF No. 6). In his motion, Butler requests that this action be transferred to the United States District Court for the Northern District of Illinois. (*Id.*).

## DISCUSSION

28 U.S.C. §1404(a) governs the ability of a federal district court to transfer a case to another venue. That provision provides in relevant part as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[6] *Id.* "In general, courts give considerable deference to a plaintiff's choice of forum, particularly when the plaintiff lives in

---

4 Butler removed Midvale's Complaint to this Court on November 3, 2015, on the basis of diversity jurisdiction. (ECF No. 1).
5 Midvale alleges that prior to returning his laptop, tablet computer and smart phone to Midvale, Butler may have taken steps to delete or otherwise conceal electronically stored information relating to his unlawful and tortious conduct, including sales reports and invoices he prepared relating to his sales activities for Gelhar. (Compl., ¶¶ 37-39).
6 Midvale does not dispute that this action could have been brought in the Northern District of Illinois.

that forum." *Nichols v. Morris*, 2015 WL 852621, at *6 (W.D. Mo. Feb. 26, 2015) (citing *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010); *Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923, 930 (W.D. Mo. 1985)). *See also Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F.Supp.2d 1032, 1046-7 (E.D. Mo. 2004) (citations omitted) ("The Court is mindful that it may not disturb a plaintiff's choice of forum unless a balance of relative considerations tips strongly toward the defendant. This is particularly true because plaintiff resides here and any economic injury caused by defendant's allegedly [unlawful] activity would be felt here."). Thus, in order to succeed "[t]he party seeking transfer must make a clear showing that the balance of interests weighs strongly in favor of the proposed transfer." *Nichols*, 2015 WL 852621, at *6 (citing *Houk*, 613 F.Supp. at 927). *See also Anheuser-Busch, Inc. v. City Merchandise*, 176 F.Supp.2d 951, 959 (E.D. Mo. 2001) (citation omitted) ("[U]nless the balance of interests is strongly in favor of the movant, the plaintiff's choice of forum should prevail.").

The statutory language of § 1404(a) reveals three general categories of factors courts must consider when deciding a motion to transfer: 1) the convenience of the parties; 2) the convenience of the witnesses; and 3) the interests of justice. *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir.), *cert. denied*, 522 U.S. 1029 (1997). Courts are not limited to consideration of the above factors in evaluating a motion to transfer, however; rather, "'such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors.'" *Enterprise Rent-A-Car*, 327 F.Supp.2d at 1045 (quoting *Terra Int'l.,* 119 F.3d at 691). Thus, "[f]actors which courts consider under the 'convenience' prong include (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility of records and documents, (4) the location where the conduct complained of occurred, and 5) the applicability of each state's forum

law."[7] *Federated Capital Corp. v. Nevada C.K. Inc.*, 2010 WL 1704400, at *2 (E.D. Mo. Apr. 28, 2010) (citing *Terra Int'l*, 119 F.3d at 696). "Under the interest of justice category, the courts also consider: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *C-Mart, Inc. v. Metropolitan Life Ins. Co.*, 2013 WL 2403666, at *3 (E.D. Mo. May 31, 2013) (citations omitted).[8]

Upon consideration, the Court finds the balance of factors taken into account under § 1404(a) favors denying Butler's Motion to Transfer.

### A. *Convenience of the Parties*

The first consideration when analyzing a motion to transfer under § 1404(a) is the convenience of the parties. In this case, the Court notes that while Midvale is a Missouri corporation, presumably with its relevant records, documents and other evidence located in its home district, Butler is a resident of Antioch, Illinois, outside Chicago. Transferring the case to the Northern District of Illinois thus would merely shift the inconvenience from Butler to Midvale, and so this factor weighs against granting Butler's Motion to Transfer. *See Caddy Products, Inc. v. American Seating Co.*, 2005 WL 2401910, at *2 (D. Minn. Sept. 28, 2005) (citations omitted) ("Thus, when the plaintiff resides in the chosen forum and the defendant resides in the proposed transferee forum, one party will unavoidably be inconvenienced whether or not the transfer is granted. In such a case, the plaintiff's choice of forum will prevail.").

### B. *Convenience of Witnesses*

---

7 Of these factors, the convenience of the witnesses is the "primary, if not most important" one. *Anheuser-Busch, Inc.*, 176 F.Supp.2d at 959 (citing *May Dept. Stores Co. v. Wilansky*, 900 F.Supp. 1154, 1165 (E.D. Mo. 1995)).

8 The parties do not address several of the factors in their briefs.

As noted above, the convenience of witnesses has been called "the most powerful factor governing the decision to transfer a case." 17 James Wm. Moore, et al., *Moore's Federal Practice* § 111.13[1][f][i] (3rd ed. 2010). "The convenience of the witnesses is determined by reference to their residence in relation to the district in which the action is pending and the proposed transferee district." *Id.*

In his motion Butler does not identify a single witness, other than himself, who resides in the Northern District of Illinois. Instead, Butler asserts key third party witnesses with personal knowledge of the facts involved in this case, including Gelhar's president and several of its customers, reside in Markesan, Wisconsin. (Memorandum in Support of Motion to Transfer, PP. 7-8). Butler then posits such witnesses would be less burdened if the case were transferred to the Northern District of Illinois, as said district is approximately 250 miles closer to Markesan than the Eastern District of Missouri. (*Id.*).

Midvale counters that while admittedly closer, Chicago is still at least three hours travel time from both Markesan, where Gelhar is headquartered, and Waupaca, Wisconsin, where Waupaca Foundry is headquartered. (Memorandum of Midvale Industries, Inc. in Opposition to Motion to Transfer, PP. 6-7). Midvale asserts the location of those witnesses thus should not be seen as weighing heavily in favor of transfer, especially as such witnesses may be subpoenaed and deposed at their places of employment, with the depositions then used at any hearing or trial in this matter. (*Id.*, P. 7).

Upon consideration, the Court agrees that Butler has failed to show that "such witnesses cannot be compelled to appear for discovery, in a proper place… [or] that the testimony of any necessary witness cannot be adequately presented by deposition, either read into the record from a transcript, or in the form of a videotaped deposition played for a jury." *Maritz Inc. v. C/Base, Inc.*, 2007 WL 6893019, at*12 (E.D. Mo. Feb. 7, 2007) (citations omitted). This is especially

true in light of the fact that testimony presented through depositions may be necessary in any event, as important witnesses apparently reside outside the 100-mile subpoena power of both this Court and the Northern District of Illinois. *C-Mart, Inc. v. Metropolitan Life Ins. Co.*, 2013 WL 2403666, at *4.

### C. Location of Conduct

In his motion, Butler correctly asserts that a plaintiff's choice of forum is afforded less deference when the underlying events did not occur in the chosen forum. *Dube v. Wyeth,* LLC, 943 F.Supp.2d 1004, 1007 (E.D. Mo. 2013); *Federated Capital Corp.*, 2010 WL 1704400, at *2 (citation omitted) ("The plaintiff's choice of forum is also accorded less weight where the operative events giving rise to the lawsuit took place in another forum."). Upon careful consideration of this factor, however, the Court notes that while the events giving rise to Midvale's claim of abuse of process took place in the Northern District of Illinois, the majority of events giving rise to its other claims took place in neither the Eastern District of Missouri nor the Northern District of Illinois, but instead in Wisconsin. Thus, while this factor reduces the deference afforded to Midvale's forum selection, it does so only slightly.

### D. Other Factors

Finally, the Court's review of the record demonstrates the remaining factors weigh in favor of maintaining jurisdiction of this action in this Court. As noted above, because Midvale is headquartered here and Butler resides in the Northern District of Illinois, neither party convincingly asserts that access to sources of proof or the location of documents demands litigating in its preferred forum. Further, assuming without deciding that Illinois law governs this matter, this Court is fully capable of applying the applicable laws in this case. *Buckeye Int'l, Inc. v. Unisource Worldwide, Inc.*, 2005 WL 2406026, at *4 (E.D. Mo. Sept. 28, 2005). With respect to judicial economy and the possibility of delay if the transfer is granted, the Court finds

a high likelihood that resolution of this matter would be delayed by a transfer. Finally, as for practical considerations of cost and efficiency, while Butler makes much of the fact that it will cost him more to litigate here, the fact remains that the same would be true for Midvale in the Northern District of Illinois. *See Geismann v. ZocDoc, Inc.*, 2014 WL 4230910, at *2 (E.D. Mo. Aug. 26, 2014) (internal quotations and citation omitted) ("Merely shifting the inconvenience from one side to the other…is not a permissible justification for a change of venue.").

It is important to remember that Midvale chose to bring this lawsuit in the Eastern District of Missouri, in close proximity to its principal place of business. As noted above, courts give great deference to a plaintiff's choice of forum, and a party requesting transfer under §1404(a) bears the burden of demonstrating that the transfer is justified. *Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc.*, 244 F.Supp.2d 1015, 1022 (E.D. Mo. 2002). Based on the foregoing, the Court concludes Butler has failed to meet his burden under §1404(a) of establishing that transfer is warranted, and so his Motion to Transfer must be denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED that** Timothy Butler's Motion to Transfer (ECF No. 6) is **DENIED**.

Dated this 10th Day of December, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE